```
                                          FILED
                                    CLERK U.S. DISTRICT COURT

                                          JUN 11 2008

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY                    DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL J. MONTOYA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>    Defendant. | No. EDCV 06-1312-RC<br><br>OPINION AND ORDER |

Plaintiff Russell J. Montoya filed a complaint on November 22, 2006, seeking review of the Commissioner's decision denying his application for disability benefits. On May 15, 2007, the Commissioner answered the complaint, and the parties filed a joint stipulation on June 29, 2007.

## BACKGROUND

### I

On January 12, 2004, plaintiff applied for disability benefits

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423,[2] claiming an inability to work since October 1, 2003, due to severe back pain, a lumbar spine impairment, and degenerative disc disease.[3] A.R. 50-53, 62. The plaintiff's application was initially denied on May 14, 2004, and was again denied on September 29, 2004, following reconsideration. A.R. 28-37. The plaintiff then requested an administrative hearing, which was held on January 3, 2006, before Administrative Law Judge Lowell Fortune ("the ALJ"). A.R. 38, 306-41. On April 10, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 15-23. The plaintiff appealed this decision to the Appeals Council, which denied review on September 25, 2006. A.R. 5-8, 12-14.

## II

The plaintiff, who was born on August 22, 1956, is currently 51 years old. A.R. 50, 71, 80. He has completed three years of college, and has previously worked as a carpenter. A.R. 63, 68, 75, 78.

The plaintiff injured his back and left knee in a work-related accident on October 10, 2003. A.R. 122, 173, 311. About twenty years

---

[2] Although plaintiff's complaint requests review of the Commissioner's decision denying him benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Act, 42 U.S.C. § 1382(a), Complaint at 1, there is no evidence in the record that plaintiff applied for SSI benefits.

[3] At the administrative hearing, however, plaintiff testified he became totally disabled on October 10, 2003, approximately two days after an on-the-job accident in which his "knee collapsed," and that he was also suffering from insomnia, nausea and asthma. Certified Administrative Record ("A.R.") 310-11, 321, 323.

before the accident, plaintiff had previously injured his back, A.R. 174, and, in December 1999, he underwent L5-S1 spinal fusion to treat spondylolisthesis.[4]  A.R. 122, 143, 174, 226.

Lumbar spine x-rays taken October 28, 2003, showed, among other things, approximately 2-3 mm. anterior spondylolisthesis at L5-S1 and minimal narrowing of the L4-L5 and L5-S1 discs.  A.R. 194, 196-97.  A lumbar spine MRI performed November 12, 2003, showed:  postoperative changes at the L5-S1 level, with an artifact from a prosthetic disc; degenerative endplate changes; a grade I anterolisthesis at L5-S1; a laminectomy defect at L5-S1; mild ligamentous hypertrophy and facet arthropathy at L3-L4; ligamentous hypertrophy and facet arthropathy at L4-L5; loss of signal hydration consistent with early disc desiccation at L4-L5; a left paracentral 2-3 mm. circumferential disc bulge; and mild bilateral foraminal compromise at L4-L5.  A.R. 120, 192.

On December 10, 2003, Gilbert L. Hyde, M.D., an orthopedic surgeon, examined plaintiff, diagnosed him with aggravation of the lumbar spine L5-S1 fusion, probable pseudoarthrosis[5] at L5-S1, and

---

[4] Spondylolisthesis is "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect of the pars interarticularis."  Dorland's Illustrated Medical Dictionary, 1684 (29th ed. 2000).

[5] Pseudoarthrosis is "a pathological entity characterized by deossification of a weight-bearing long bone, followed by bending and pathological fracture, with inability to form normal callus leading to existence of the 'false joint' that gives the condition its name."  Dorland's Illustrated Medical Dictionary at 1480-81.

3

1  left knee pain (rule out a medial meniscal tear), and opined plaintiff
2  was temporarily totally disabled[6] for the next 45 days.  A.R. 173-78.
3  A left knee MRI performed January 8, 2004, revealed minimal joint
4  effusion and a tear of the posterior horn of the medial meniscus.
5  A.R. 172.
6
7       On January 21, 2004, Dr. Hyde reexamined plaintiff, recommended
8  arthroscopic surgery to treat the meniscal tear, and opined plaintiff
9  remained temporarily totally disabled until his next visit.  A.R. 169-
10 71.  On March 4, 2004, Dr. Hyde again recommended left knee
11 arthroscopy, and also recommended a posterior spinal fusion with
12 instrumentation at L5-S1 if plaintiff's back symptoms persisted, and
13 opined plaintiff should remain off work for 45 more days.  A.R. 165-
14 68.  Dr. Hyde continued to treat plaintiff until June 16, 2004, when
15 he opined physical therapy and medication were helping plaintiff, but
16 he remained temporarily totally disabled for 45 more days.  A.R. 153-
17 64.
18 //

---

[6] Under California workers' compensation terminology, "[t]he term 'temporarily totally disabled' means that an individual is 'totally incapacitated' and 'unable to earn any income during the period when he is recovering from the effects of the injury.'" Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103 n.2 (C.D. Cal. 2002) (citation omitted); Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996); Herrera v. Workmen's Comp. Appeals Bd., 71 Cal. 2d 254, 257, 78 Cal. Rptr. 497, 499 (1969); see also Robinson v. Workers' Comp. Appeals Bd., 194 Cal. App. 3d 784, 792, 239 Cal. Rptr. 841 (1987) ("'The period of temporary total disability is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention[,]' or until his condition becomes permanent and stationary."  (citations omitted)).

On April 29, 2004, Bunsri T. Sophon, M.D., an orthopedic surgeon, examined plaintiff, and diagnosed him with a left knee medial meniscus tear and a lumbosacral sprain. A.R. 122-26. Dr. Sophon opined plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could sit, stand and/or walk for six hours out of an 8-hour work day, and could occasionally bend, stoop, crouch, climb, kneel, squat, and walk over uneven terrain. A.R. 126.

On May 11, 2004, nonexamining physician Leonore Limos, M.D., opined plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could sit, stand, or walk six hours in an eight-hour workday, was limited in his ability to push and/or pull with his lower extremities, and could occasionally climb, balance, stoop, kneel, crouch, and crawl. A.R. 129-36.

On May 29, 2004, plaintiff was treated in the San Antonio Community Hospital emergency room after a vehicle traveling 5-10 miles per hour struck him. A.R. 140, 142. Lumbar spine x-rays revealed disc space cages at L5-S1 and a minimal degree of anterior spondylolisthesis at L5-S1, but no acute fracture or bone destruction of the vertebral bodies. A.R. 152, 186. That same day, plaintiff was walking without assistance and was released to return home. A.R. 149.

Between February 1, 2005, and May 22, 2006, plaintiff received treatment at the Loma Linda Veterans Administration Medical Center ("VA"). A.R. 199-283, 288-305. Lumbosacral spine x-rays taken March 17, 2005, revealed, among other things, a slight residual anterolisthesis of the L5 vertebra on the sacrum and mild-to-moderate

degenerative disc disease at L4-L5. A.R. 201-02. A left knee MRI performed March 22, 2005, revealed minimal degenerative changes of the tibial plateau, with evidence suggesting a chronic tear rather than post-surgical changes to the posterior horn of the medial meniscus. A.R. 200-01, 221-22. On April 24, 2005, plaintiff was seen in the VA emergency room, complaining of severe lower back pain, A.R. 209-14; he was treated with medication for muscle spasms, provided with a cane, and released. A.R. 210-11.

On August 29, 2005, plaintiff underwent left knee arthroscopic surgery consisting of a partial meniscectomy. A.R. 246-48, 250, 266-67. Plaintiff did well postoperatively, and was diagnosed with left knee posterior horn medial meniscus tear and chondromalacia[7] of the medial compartment and patellofemoral articulations. A.R. 246, 266-67, 278. On September 10, 2005, plaintiff was treated in the VA emergency room for complaints of chest pain, and he was diagnosed with gastroesophageal reflux disease and discharged; chest x-rays were normal. A.R. 232, 241-45. Lumbosacral spine x-rays taken September 16, 2005, revealed a minor abnormality consisting of a 7-9 mm. anterolisthesis at L5-S1. A.R. 230, 240. A lumbar spine CT scan taken October 17, 2005, revealed, among other things, mild left neural foraminal stenosis at L5-S1 and slight bilateral neural foraminal narrowing at L4-L5. A.R. 302. On November 3, 2005, plaintiff's treating VA physician, Betty Stepien, M.D., declined plaintiff's request to find him disabled, opining she had "no evidence of

---

[7] Chondromalacia is "softening of the articular cartilage, most frequently in the patella." Dorland's Illustrated Medical Dictionary at 344.

6

1  [plaintiff] being permanently disabled from his back." A.R. 279. On
2  November 27, 2005, plaintiff was again admitted to the VA emergency
3  room, where he was diagnosed with chronic back pain, treated with
4  medication, and released. A.R. 273-76. On January 26, 2006, Gary K.
5  Pang, M.D., diagnosed plaintiff with failed back surgery syndrome,
6  lumbar facet syndrome, and sacroiliac joint dysfunction. A.R. 303.
7  On May 10, 2006, plaintiff returned to the VA emergency room, where he
8  was diagnosed with an exacerbation of back pain, treated with
9  medication, and released. A.R. 289-95.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the

Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Lingenfelter, 504 F.3d at 1035.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the

8

Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since October 1, 2003. (Step One). The ALJ then found plaintiff has lumbar disc disease, right and left knee degenerative joint disease (status post surgery), and asthma (controlled on medication), which are severe impairments (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform his past relevant work. (Step Four). Finally, the ALJ concluded plaintiff is able to perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

## IV

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff has the RFC "to perform a wide range of light exertional work[,]"[8] as follows:

---

[8] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a

> [The plaintiff] is able to lift or carry up to 20 pounds occasionally and 10 pounds frequently, and [plaintiff] is able to sit, stand or walk 4 hours in an 8-hour workday. The [plaintiff] should be allowed the option to change positions every 30 minutes, with the change itself taking place for 1-3 minutes. The individual could engage in occasional balancing, stooping, and crouching. The [plaintiff] is able to kneel/squat on a less than occasional basis, and is unable to crawl or climb ladders, scaffolds, and ropes. The [plaintiff] should avoid even moderate exposure to vibration; and all exposure to hazards such as dangerous or fast-moving machinery, and fumes, odors, dust, gases, and chemicals.

A.R. 22. However, plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ did not consider the testimony of plaintiff's friend, Annette Fernandez, and failed to properly address the opinion of Dr. Sophon, an examining physician.

### A. Lay Witness Testimony:

At the administrative hearing, plaintiff's friend, Annette Fernandez, testified she has known plaintiff for 32 years and sees him every day. A.R. 329-33. Ms. Fernandez stated plaintiff "has difficulty in most movement during the day. He has a hard time

---

full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday." Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

sleeping. He has a hard time just going from one room to another, just basic everyday movement." A.R. 330. Further, she testified she can tell when plaintiff has pain because he makes noises when he moves and "always has some kind of an excruciating look on his pain [sic] when he gets up, sits down, tries to walk from one place to another." A.R. 330. Ms. Fernandez recalled that plaintiff once collapsed in a store, was in such excruciating pain on Easter Sunday of 2005 that he could barely move around, and she had been called at work on approximately four occasions when he either blacked out or was in excruciating pain. A.R. 330-31. She testified that the pain worsened over the past two years and plaintiff, who used to be very involved in athletics, "can't even sit through a football game anymore." A.R. 332. Finally, Ms. Fernandez stated plaintiff experiences mood swings and is "just very emotionally unstable quite a lot." A.R. 331.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Parra, 481 F.3d at 750; see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). Here, however, the ALJ did not discuss Ms. Fernandez's testimony, which was legal error. Robbins, 466 F.3d at 885; Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006).

Nevertheless, the Commissioner contends the ALJ's error was harmless. Jt. Stip. at 7:19-24. The Court agrees, and "can

confidently conclude that no reasonable ALJ, when fully crediting [Ms. Fernandez's] testimony, could have reached a different disability determination [than the ALJ]." Robbins, 466 F.3d at 885; Stout, 454 F.3d at 1056. "[D]ifficulty in . . . movement" does not necessarily demonstrate that plaintiff's RFC is more limited than the ALJ found. To the contrary, Ms. Fernandez's testimony that plaintiff "can't even sit through a football game anymore[,]" is completely consistent with the ALJ's RFC assessment, which "allowed [plaintiff] the option to change positions every 30 minutes[.]" Similarly, plaintiff's mood swings and emotional instability do not suggest a different outcome since plaintiff does not claim, and the medical records do not show,[9] plaintiff is mentally impaired. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam). Finally, Ms. Fernandez's testimony regarding plaintiff's "blackouts" was cumulative of plaintiff's similar testimony, which the ALJ found not credible, and plaintiff does not challenge the ALJ's finding that plaintiff's "testimony, to the extent he alleged an inability to perform even light work, was not credible." A.R. 21-22, 312-14, 319-21, 330-31; see Palas v. Astrue, 259 Fed. Appx. 933, 936 (9th Cir. 2007) ("[T]he ALJ's failure to discuss lay witness statements in his decision does not support reversal because that error was harmless . . . [in that the] lay witness statements were cumulative of other materials in the record. . . .");[10] Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[T]he ALJ's failure to give specific reasons for disregarding [lay witness'] testimony is inconsequential" when the ALJ properly rejected the

---

[9] See A.R. 238, 253, 255, 258-64, 288-89, 299.

[10] See Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).

12

claimant's credibility, and "the same evidence supports discounting the [lay witness'] testimony. . . ."). Therefore, the ALJ's failure to consider Ms. Fernandez's testimony was harmless error. Frost v. Barnhart, 314 F.3d 359, 361 (9th Cir. 2002); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

    B.    **Examining Physician's Opinion:**

"[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Widmark, 454 F.3d at 1066.

In April of 2004, Dr. Sophon opined plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk for six hours out of an 8-hour work day, and could occasionally bend, stoop, crouch, climb, kneel, squat, and walk over uneven terrain. A.R. 126. However, plaintiff contends the ALJ's RFC determination that he has the RFC to do certain light exertional work does not address Dr. Sophon's opinion that he is limited to occasional walking on uneven terrain. Jt. Stip. at 9:18-22. There is no merit to this claim. Even assuming *arguendo* the ALJ erred in implicitly rejecting Dr. Sophon's opinion that plaintiff is limited to occasional

walking on uneven terrain, vocational expert Stephen Berry testified that an individual of plaintiff's age, education, work experience and RFC could perform a significant number of jobs in the regional and national economy that do **not** require any walking on uneven terrain, including work as a cashier II (Dictionary of Occupational Titles ("DOT") no. 211.462-010), small parts assembler (DOT no. 706.684-022), and final inspector (DOT no. 727.687-054). A.R. 337-38; see also U.S. Dep't of Labor, Dictionary of Occupational Titles, 183, 694, 739 (4th ed. 1991); U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, 205, 284, 333 (1993). Therefore, any error in not discussing this aspect of Dr. Sophon's opinion was harmless.

## VI

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Hoopai, 499 F.3d at 1074-75; Widmark, 454 F.3d at 1069. To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite [his] identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, Subpt. P, app. 2."[11] Tackett v. Apfel, 180 F.3d 1094,

---

[11] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and

14

1099 (9th Cir. 1999); Widmark, 454 F.3d at 1069. However, the ALJ cannot rely on the Grids when the claimant suffers from significant nonexertional limitations; rather, he must obtain a vocational expert's testimony. Widmark, 454 F.3d at 1069; Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002). Moreover, hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Thomas, 278 F.3d at 956; Lewis, 236 F.3d at 517, and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." Tackett, 180 F.3d at 1101.

Here, as discussed above, vocational expert Stephen Berry testified at the administrative hearing that an individual of plaintiff's age, education, work experience and RFC could perform a significant number of jobs in the regional and national economy, including work as a cashier II, small parts assembler, and final inspector. However, plaintiff contends the vocational expert's testimony is not supported by substantial evidence because in the hypothetical question to the vocational expert the ALJ failed to include the "limitation of occasionally being able to walk on uneven terrain, which was determined by Dr. Sophon." Jt. Stip. at 14:14-17. Yet, as the Court has previously found, any possible error in this

---

determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

regard is harmless since the jobs the vocational expert identified do **not** require any walking over uneven terrain. <u>Burch</u>, 400 F.3d at 679; <u>Curry</u>, 925 F.2d at 1129. Therefore, the vocational expert's testimony provides substantial evidence to support the ALJ's conclusion that plaintiff can perform a significant number of jobs in the national economy.[12] <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163 (9th Cir. 2001); <u>Meanel</u>, 172 F.3d at 1115.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: June 11, 2008

ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

---

[12] Although the ALJ specifically cites the Grids in finding plaintiff not disabled, A.R. 22, any error in this regard is harmless since the ALJ's decision makes clear he did not rely solely on the Grids, but he also relied on the vocational expert's testimony. <u>See</u> A.R. 20-21.

R&R\06-1312.mdo
6/11/08